UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                       Case No. 21-cr-20638

v.                                 HON. SEAN F. COX

JOSEPH KOWALCZYK,

      Defendant.

_____/

## **UNITED STATES' SENTENCING MEMORANDUM**

Defendant Joseph Kowalczyk has pleaded guilty to making an interstate communication with a threat to injure. In May 2020, motivated by what appears to have been anti-government and/or misogynistic sentiments, Kowalczyk posted threats of violence on Twitter. The FBI tracked him down the next day, and when confronted, Kowalczyk told the FBI that he was "testing the government" and was upset that they did not respond more promptly. He agreed not to post anything further, but got back on Twitter once the FBI left his home to brag about what he had done and to encourage others to follow in his footsteps.

Unfortunately, even after he was arrested and granted pretrial release, Kowalczyk's alarming behavior continued. He became noncompliant with his court-ordered mental health treatment, which resulted in his hospitalization and being brought before this Court for bond review proceedings. Those proceedings brought to light further concerning conduct that Kowalczyk engaged in while on bond—engaging in a sexual relationship with an underaged girl, and reportedly requesting and obtaining nude photographs from her (and sharing those photographs with others). Kowalczyk admitted to having sex with her while she was 17 and he was 21, and when she confronted him with having raped her, he responded "I'm sorry I raped u" and "I'm a God f*cking rapist."

Being on supervision has proven insufficient to ensure he is compliant with the mental health treatment he indisputably needs, and insufficient to protect others from him. As Dr. Atara Abramsky (the psychologist retained by the defense) found, Kowalczyk has "a history and behaviors that are concerning and create risk factors as they relate to the safety of the community." The government recommends that a sentence within the guideline range is warranted in light of the

seriousness of the offense, Kowalczyk's history and characteristics, the need to protect the community, and to afford adequate deterrence.

## I. STATEMENT OF FACTS

### A. Kowalczyk's Threats

On May 10, 2020, Twitter handle @JT616k posted the following: "@FBI uk what I'm done joking this is a serious threat I have 10 bombs ready to go off rn in my basement with 5 guns that are illegal own come get me you guys have til 8 before I make this city in my own little hell #forwaco [emoji]":



The use of "@FBI" in a Twitter post denotes that the user is intending to communicate directly to the FBI. The post was sent to the attention of the FBI National Threat Operations Center, which is responsible for

gathering and disseminating various threats and intelligence received to the appropriate FBI field office.  (PSR ¶ 11.)

Based on @JT616k's claim that @JT616k had illegal firearms and explosives at @JT616k's residence and intended to use them to injure individuals in the vicinity, the FBI considered this threat imminent and credible under the belief that death or serious physical injury would occur without law enforcement intervention.  (*Id*.)  The FBI found that @JT616k appeared to be used by Kowalczyk, and found him at his residence in Clinton Township, MI on May 11, 2020.  Kowalczyk confirmed that he made the Twitter post, and stated that he was "testing the government" and was upset that the FBI did not respond more promptly. He claimed that he did not intend to carry out acts of violence against anyone and did not own any weapons or explosive devices. (*Id*. ¶ 12.)

Kowalczyk also stated that he would not post anything further. However, after his interview was concluded, Kowalczyk logged back onto Twitter and began posting again.  (*Id*. ¶ 13.)  Among other things, he posted that "…my plan was to see if the FBI would show up to a death threat in matter of time (which they didn't [emoji]) n since they didn't I'm

gonna f*ck with them" and encouraged others to engage in the same
conduct:





Notably, the Twitter post that originally triggered the FBI's
investigation was not the only threat that Kowalczyk posted online
during this period of time.  For example, on May 10, 2020, he also posted
"@FBI 20 minutes before the killing starts n I get my revenge on the
people that made me feel alone n for the women for not sleeping with me
n for the men who took the women from me [emoji] #f*ckfbi #ftp":



In addition, based on Kowalczyk's assertions that he had posted "a shit ton of death threats" and "awhole bunch of death threats," it appears Kowalczyk posted further additional threats (as discussed below, these additional threats may have been subsequently deleted or otherwise made inaccessible):





Based on Kowalcyzk's post blaming "the women for not sleeping with [him]" (above) and others (below), it appears Kowalcyzk's conduct may have been motivated by misogynistic and/or anti-government sentiments:







## B. Kowalczyk's Violation of Pretrial Release

Kowalczyk was released on bond after his arrest.  (PSR ¶¶ 2, 8.) Among other things, he was required to participate in "mental health treatment as directed."  (*Id.* ¶ 2; ECF No. 6.)  He reportedly did well for over a year, but in December 2021, he admitted to Pretrial that he had

7

stopped taking his medication in September, because he felt his mental health was stable and that he no longer needed medication.  Pretrial was concerned and referred him for psychiatric evaluation.   Pretrial scheduled an appointment on January 29, 2022 for him, and reminded him multiple times leading into it, including 3 days before; Kowalczyk confirmed he would attend, but failed to do so, claiming it was because he did not have a ride.  Pretrial then scheduled another appointment for him on February 11, 2022 via telemedicine.  Before that appointment could occur, Pretrial found out that Kowalczyk's uncle and grandfather had passed, and scheduled an emergency telemedicine therapy session for Kowalczyk on February 8, 2022.  Kowalczyk again confirmed that he would attend, but when the provider called for his appointment, he told the provider he was asleep and hungover and would call back.  He never did.  (PSR ¶ 9; ECF No. 28.)

That night, though, Clinton Township police received a report that Kowalczyk sent pictures of pills to his ex-girlfriend and threatened to kill himself.  Kowalczyk admitted to police that he had sent those messages and said he had done it to upset his ex-girlfriend; he declined their offer to speak to a mental health professional.  But approximately 5 hours

later, Kowalczyk called the police and reported that he was being harassed by his ex-girlfriend, and that she had threatened to file a rape report against him. (PSR ¶ 9; ECF No. 28.) Notably, the police report indicates that Kowalczyk admitted to having sex with her in mid-2021 (when she was 17 years old and he was 21):

> Kowalczyk advised his ex-girlfriend ██████, was harassing him and threatened to file a rape report against him. Kowalczyk further stated the incident (CSC) in question occurred approximately eight months ago in Eastpointe, at Kowalczyk's residence. Kowalczyk advised during this specific incident he engaged in vaginal intercourse with ████.

He also reported that he was suicidal, so the police took him to a hospital for mental health treatment. The events resulted in Pretrial filing a Petition for Action on Conditions of Pretrial Release. (PSR ¶ 9; ECF No. 28.)

Kowalczyk's ex-girlfriend reported that Kowalczyk choked her after trying to initiate sex with her in May 2021, and raped her in June 2021 (which appears to refer to the same incident discussed above where Kowalczyk admitted to having sex with her):



> ██████ recalled an incident on JOSEPH KOWALCZYK's 21st birthday where ████ was at his house *[Agent Note: KOWALCZYK's birthday is ████, 2000]*. KOWALCZYK told ████ that he thought she looked good, which ████ recognized as an attempt by KOWALCZYK to have sex with her. ████ repeatedly told him "no". The two were play-fighting until KOWALCZYK placed his hands around ████ neck and began to choke her for an unspecified amount of time. ████ smacked him in the face in an attempt to get him to stop. KOWALCZYK let ████ go and went upstairs. KOWALCZYK began to cry to others in the house and made statements about being "abusive."

> In June 2021, prior to their break up, KOWALCZYK and ▮▮▮▮▮ were at his
> house laying in bed. KOWALCZYK and ▮▮▮▮ had been drinking alcohol that day.
> KOWALCZYK began to touch ▮▮▮▮ without her consent and got on top of her.
> ▮▮▮ told him "no" approximately 10 times and tried to kick him off of her.
> ▮▮▮ could not recall details since she was half asleep during the incident
> but did acknowledge that she was raped. After the incident, ▮▮▮▮ cried for
> twenty minutes and then walked home. This occurred when ▮▮▮ was 17 years
> of age.

Although she was not comfortable reporting the rape to police, she provided text messages between her and Kowalczyk regarding the incident, including one where he said "I'm sorry I raped u," and she responded "I said no 10 times before… I just thought that meant no??":



She also provided messages where Kowalczyk expressed being upset that she had made him "feel like a piece of shit rapist" and a "God f*cking rapist":



She additionally reported that while they were dating, Kowalczyk requested (and received) nude photographs from her; she was 17 at the time:



Based on text messages his ex-girlfriend received from his sister in March 2022, it appears Kowalczyk then shared her nude photographs with others:



In addition, around the time of Kowalczyk's February 2022 hospitalization, he sent his ex-girlfriend's father harassing messages, including "Just thought should also we fuvked In your house when I snuck in a few times [emoji]":



## II.   ADVISORY SENTENCING GUIDELINES

On October 13, 2021, Kowalczyk was charged by information on one count of violating 18 U.S.C. § 875(c), interstate communications with a

threat to injure.  On April 19, 2022, Kowalczyk pleaded guilty without a Rule 11 plea agreement.

The Probation department calculated Kowalczyk's guideline range to be **0–6 months**, based on a total offense level of 6 and a criminal history category of I.  (PSR ¶¶ 27, 30, 60, 65.)  The government objects to the Probation department's calculation, and believes that Kowalczyk's applicable guideline range is **10–16 months**, based on a total offense level of 12 (which accounts for a 2-level reduction for acceptance of responsibility) and a criminal history category of I:

- **The four-level reduction under USSG § 2A6.1(b)(6) for the offense involving a single instance evidencing little or no deliberation is not applicable:**

  For § 2A6.1(b)(6) to be applicable, Kowalczyk's offense must have both (1) involved "a single instance," and (2) "evidenc[ed] little or no deliberation."

  As to the first issue, the threat Kowalczyk posted on Twitter that triggered the FBI's investigation—"@FBI uk what I'm done joking this is a serious threat I have 10 bombs ready to go off rn in my basement with 5 guns that are illegal own come get me you guys

13

have til 8 before I make this city in my own little hell #forwaco [emoji]"—was not the only threat that Kowalczyk posted on Twitter on May 10, 2020. Ten minutes after Kowalczyk made that post, he posted on Twitter the following message: "@FBI 20 minutes before the killing starts n I get my revenge on the people that made me feel alone n for the women for not sleeping with me n for the men who took the women from me [emoji] #f*ckfbi #ftp." Kowalczyk argues that while he made two threatening posts, the two should be counted as a "single instance" because they were the result of a "single impulse, or is a single thoughtless response to a particular event." (ECF No. 45, PageID.243.) However, the words of the two posts suggest two different motivations and forms of violent attacks—the first post threatened what appeared to be indiscriminate violence through the use of bombs and guns "#forwaco" (referencing the 1993 siege of a Branch Davidians compound in Waco, TX by law enforcement); the second, in contrast, threatened more targeted violence in revenge against the "people that made me feel alone n for the women for not sleeping with me n for the men who took the women."

But even if, as Kowalczyk claims, the threats were nonetheless the product of a "single impulse," the reduction under § 2A6.1(b)(6) would still be inapplicable because his conduct did not "evidenc[e] little or no deliberation." Although the defense claims that the reduction must be applied absent "evidence of planning or effort to carry out the threat" (ECF No. 45, PageID.244), the guideline requires no such thing.[1] The case cited by Kowalczyk on this issue does not actually support his point. Instead, *United States v. Wright-Darrisaw*, 781 F.3d 35, 41 (2d Cir. 2015) states that a court may find "a basis for inferring deliberation sufficient to reject the four-level reduction" if *either* "a defendant's course of conduct leading up to and following the time the threat was made is closely tied to the communication of the threat, *or* if the defendant makes any effort to carry out the threat" (emphasis added). Here, among other things, several hours prior to posting the threat that triggered the FBI's investigation, Kowalczyk posted on Twitter a message reflecting anti-government sentiment: "The government

---

[1] In fact, there is a separate guideline which addresses "conduct evidencing an intent to carry out such threat"—§ 2A6.1(b)(1).

F*cking deserved it #f*ckthegov" (referencing the 1995 bombing of the Alfred P. Murrah Federal Building in Oklahoma City, Oklahoma).  In addition, Kowalczyk told the FBI that he committed the offense conduct to "test[] the government."  (PSR ¶ 12.)  He discussed his motivations with Dr. Abramsky, as well, explaining that:

> In the weeks leading to this offense, he had been depressed an anxious.  He was reading about things like the Waco, Texas, siege that took place in 1993.  He began to perseverate on the government, feeling that the FBI has 'pulled some shit' over the years with the way they dealt with certain crises in the United States. . . . [A]fter he put on the first tweet and nothing happened he became angry. . . . His anger fueled the rest of his tweets. He stated he developed a form of tunnel vision, wondering what it would take to get the attention of the FBI."

(Def. Ex. A, Abramsky Report at 6.)  Thus, by his own admissions, in making his threats, Kowalczyk did not act unthinkingly and spontaneously, but rather intentionally with the goal of "testing the government" and "get[ting] the attention of the FBI" after weeks of "perseverat[ing] on the government." As such, his course of conduct was closely tied to the communication of his threats to the FBI, and his conduct evidenced more than "little or no deliberation."  *See*

*Wright-Darrisaw*, 781 F.3d at 39–41; *see also United States v. Osborn*, 12 F.4th 634 (6th Cir. 2021) (affirming district court's denial of § 2A6.1(b)(6) reduction when the defendant had a pattern of calling government officials about differences in policy views and threatening them, despite the defendant asserting that he did not have a firearm or plans to carry out his threat).

As a result, the government believes that Kowalczyk is subject to a total offense level of at least 12 (10, after accounting for acceptance of responsibility); with a criminal history category of I, the applicable guideline range would be 6–12 months.  In addition, as discussed below, the government believes that a two-level enhancement under §2A6.1(b)(2)(A) is applicable, which would further render him ineligible for a reduction under § 2A6.1(b)(6) regardless of whether his actions constituted a "single instance" or "evidenc[ed] little or no deliberation."

- **The two-level enhancement under USSG § 2A6.1(b)(2)(A) for the offense involving more than two threats is applicable:**

As discussed above, Kowalczyk posted at least two separate threatening communications on Twitter on May 10, 2020.  In

17

addition, Kowalczyk also posted assertions that he had made "a shit ton of death threats" and "awhole bunch of death threats."  "[S]hit ton" and "[]whole bunch" are phrases that typically indicate a large amount or quantity.  It thus appears that Kowalczyk posted further additional threatening communications than the two discussed above; these communications may have been subsequently deleted or otherwise made inaccessible.

The defense claims that such additional threats cannot have been made because they would have been "captured and saved by Twitter." (ECF No. 45, PageID. 247.)  This assertion appears to be based on a misunderstanding of the record.  The request the FBI sent to Twitter the night Kowalczyk made his threats was for purposes of promptly addressing what appeared to be an imminent and credible threat—it sought subscriber information, to assist in identifying the source of the threat:

On 05/10/2020 at 10:21pm Eastern Time, Twitter, Inc. provided NTOC SOMEX with subscriber information and IP logs of @JT616k, to include:

The request directed at the content of the account was not sent until two days later, on May 12, 2020, after it was determined that Kowalczyk would be prosecuted for his conduct.  In the meantime,

it appears that content was removed from Kowalczyk's Twitter account—in fact, the two threats discussed above were captured by law enforcement during review of his Twitter account prior to the sending of the May 12 request, but were not contained in the records received from Twitter[2]:

 

It is possible that Kowalczyk deleted this content (and related content) from his account after he was confronted by the FBI on May 11, 2020.

Unlike § 2A6.1(b)(6) discussed above, § 2A6.1(b)(2)(A) refers to "threats" rather than "instance[s]." This has been recognized to be an important distinction—whether a defendant's threats constitute a "single instance" for purposes of § 2A6.1(b)(6) is a separate issue from whether that "instance" nonetheless consisted

---

[2] The records were produced in discovery and are available for review.

of the defendant making more than two threats for purposes of § 2A6.1(b)(2)(A).  *See United States v. Frazer*, 391 F.3d 866, 871 (7th Cir. 2004) (rejecting the defendant's contention that the enhancement under § 2A6.1(b)(2)(A) should not apply when several threats comprise a "single instance or episode").  Here, given that (1) Kowalczyk posted two threats which were captured by law enforcement, yet were deleted from the account before the FBI's preservation request was sent to Twitter; and (2) Kowalczyk described himself as having made a "shit ton" and "[]whole bunch" of threats (which is consistent with his report to Dr. Abramsky that anger drove him to continue making posts to get the attention of the FBI), the evidence supports the application of §2A6.1(b)(2)(A).

With this enhancement, Kowalczyk would be subject to a total offense level of 14 (12, after accounting for acceptance of responsibility); with a criminal history category of I, the applicable guideline range would be 10–16 months.

## III.   SENTENCING FACTORS, 18 U.S.C. § 3553

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the

objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

**A. The 3553(a) Factors as Applied in This Case**

    **1. Nature and Circumstances of the Offense, and the Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment – 18 U.S.C. §§ 3553(a)(1) and (a)(2)(A)**

A sentence within the guideline range is warranted in light of the nature and circumstances of the offense, and would reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

The offense is no doubt serious. In May 2020, motivated by what appears to have been anti-government and/or misogynistic sentiments, Kowalczyk posted threats of violence on Twitter. The FBI tracked him down the next day. When confronted, Kowalczyk told the FBI that he

21

was "testing the government" and was upset that they did not respond more promptly.  He agreed not to post anything further, but went back on that once the FBI left his house—getting back on Twitter to boast about "f*ck[ing]" with the FBI and encouraging others to engage in the same conduct.

### 2. History and Characteristics of the Defendant, and the Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant – 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), and (a)(2)(C)

Kowalczyk's history and characteristics show that a sentence within the guideline range is warranted.  A sentence within the guideline range would also afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.

In addition to his serious offense conduct, Kowalczyk's conduct during the pendency of this case demonstrates that he poses a danger to the community (even while on court supervision).  Despite being ordered to participate in mental health treatment, Kowalczyk chose to stop taking his medications, and failed to admit that to Pretrial for months. When Pretrial became concerned and referred him for psychiatric evaluation, Kowalczyk was noncompliant—missing even telemedicine

appointments that Pretrial had scheduled for his convenience.  This chain of events ultimately led to him being hospitalized and brought before this Court for bond review proceedings.

It also brought to light other concerning conduct.  In mid-2021—while on bond to this Court and reportedly compliant with his mental health treatment—Kowalczyk engaged in a sexual relationship with an underaged girl.  He admitted to police that he had engaged in "vaginal intercourse" with her when she was 17 and he was 21, and also told her father that "we f*[c]ked In your house when I snuck in a few times." According to his ex-girlfriend, Kowalczyk was sexually violent with her and raped her.  Although she was not comfortable reporting it to police, she did confront him about it, and he responded "I'm sorry I raped u" and "I'm a God f*cking rapist."  In addition, she reported that Kowalczyk requested and received nude photographs from her (again, while she was underaged); even worse, it appears he shared them with others, based on his sister taunting his ex-girlfriend by telling her "they have ur nudes too[,] [s]o go off."

Kowalczyk further appears to have a concerning history of violent inclinations towards others.  Among other things, Dr. Abramsky

recounted an incident when Kowalcyzk was in middle school, where he planned to "put [another student] in the hospital," and came to school with sticks and stones in his bag (his plans were thwarted when the school found out).  (Def. Ex. A, Abramsky Report at 5.)  Dr. Abramsky also reported that, as a teen, Kowalczyk "developed reoccurring and intrusive thoughts of harming people and animals."  (*Id.* at 4.)

Kowalczyk's offense conduct and conduct while on bond are highly concerning.  As noted in Dr. Abramsky's report, Kowalczyk has "a history and behaviors that are concerning and create risk factors as they relate to the safety of the community."  (*Id.* at 9.)  A sentence within the guideline range is warranted in light of his history and characteristics, the need to protect the community, and to afford adequate deterrence.

**3. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner – 18 U.S.C. §§ 3553(a)(2)(D)**

Kowalczyk is young—just 22 years old—and can turn his life around, especially if he takes advantage of programs while in the custody of the Bureau of Prisons and on supervised release.  Kowalczyk reports suffering a difficult childhood, a lifelong history of mental and emotional health issues, and a history of substance abuse.  (PSR ¶¶ 36–37, 44–47,

49–52.)  Unfortunately, as his mother reported, he has struggled with treatment for his issues.  (*Id.* ¶ 47.)  Indeed, even while on supervision to this Court, Kowalczyk decided to stop taking his medication because he felt his mental health was stable and that he no longer needed it.  And despite wanting to stop drinking after having been injured in a hit-and-run accident in 2019 while he was intoxicated and under the influence of drugs, Kowalczyk was unable to maintain his sobriety.  (*Id.* ¶¶ 42; Def. Ex. A., Abramsky Report at 3.)  While in custody, Kowalczyk should take advantage of the treatment programs available to him; he may particularly benefit from being in a controlled setting to facilitate his participation in such programs.  Kowalczyk would also benefit from the Bureau Literacy Program, which can help him get his GED.

## IV.   CONCLUSION

The government recommends that the Court impose a sentence within the guideline range.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*/s Alyse Wu*
Alyse Wu
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9589
alyse.wu@usdoj.gov

Dated: August 12, 2021

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 12, 2022, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the ECF system, which will send notification to all counsel of record.

*s/Alyse Wu*

Alyse Wu
Assistant U.S. Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 226-9589
alyse.wu@usdoj.gov
